**Portia MORGAN, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 97–CT–1023.

District of Columbia Court of Appeals.

Argued April 29, 1999.

Decided May 27, 1999.

Michael L. Spekter, Washington, DC, for appellant.

Rosalyn Calbert Groce, Director, Policy and Appeals Branch, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Robert R. Rigsby, Deputy Corporation Counsel, were on the brief, for appellee.

* Sitting by designation pursuant to D.C.Code

Before SCHWELB and FARRELL, Associate Judges, and WASHINGTON, Associate Judge of the Superior Court of the District of Columbia.*

FARRELL, Associate Judge:

After a bench trial, appellant was found guilty of one count of failing to obey the lawful order of a police officer. 18 DCMR § 2000.2 (1997 Supp.) ("FTO"). The conviction stemmed from her failure to obey the officer's direction to move out of the street after he saw her, "dress[ed] in a fashion consistent with ... ladies of the evening," blocking traffic by standing in the street flagging down cars at an intersection. The trial court ordered appellant to pay a fine of $50 and an assessment the Crime Victims' Compensation Fund. On appeal, appellant disputes primarily the assessment to the Fund, arguing that violation of 18 DCMR § 2000.2 is not the commission of a "serious traffic or misdemeanor offense[ ]" within the meaning of the act creating the Fund.

The Victims of Violent Crime Compensation Act of 1996, D.C.Code § 3–401 *et seq.* (1998 Supp.) ("VVCCA"), establishes different levels of assessments. *See Parrish v. District of Columbia,* 718 A.2d 133, 135 (D.C.1998). Relevant to this case is the "assessment of between $50 and $250 for [commission of] other serious traffic or misdemeanor offenses." D.C.Code § 3–436(a). In *Parrish,* we rejected the argument that the adjective "serious" modifies both "traffic ... offenses" and "misdemeanor offenses," 718 A.2d. at 135–36; rather, the assessment applies to commission of all misdemeanors as well as any "serious traffic ... offense[ ]." Contrary to appellant's argument, the structure and history of 18 DCMR § 2000.2 leave no doubt in our mind that it creates, at the minimum, a serious traffic offense for VVCCA purposes. We therefore need not decide whether it also constitutes a misdemeanor.

The FTO regulation provides:

§ 11–707(a) (1995).

No person shall fail or refuse to comply with any lawful order or direction of any police officer, police cadet, or civilian crossing guard invested by law with authority to direct, control, or regulate traffic. This section shall apply to pedestrians and to the operators of vehicles.

Before the last sentence was added in 1996, the meaning of "[n]o person" was thought to be ambiguous. The amendment removed that uncertainty by explaining that the prohibition reaches pedestrians as well as operators of vehicles.[1] The amendment also increased the penalty for the offense. In place of the former minimum fine of $10 and maximum of $50, it estimated a minimum fine of $100 and a maximum of $1000. *See* 18 DCMR § 2000.10 (1997 Supp.). In adopting these amendments, the Council of the District of Columbia pointed out the special importance it attached to this traffic offense:

FTO is a criminal charge brought against a driver or a pedestrian who fails to obey the lawful order of a police officer in a traffic situation.... Although FTO is a statute of general applicability, it is often used in prostitution cases because proving the crime of prostitution requires extensive police resources, including the use of undercover police officers. However, these FTO arrests have not made a dent in the prostitution market. Prostitutes simply forfeit collateral as a cost of doing business and are back on the streets within a few hours.... The legislation designed to create barriers to prostitution, to make it more difficult and expensive to engage in the business of prostitution ....

COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE REPORT ON BILL 11–439, "SAFE STREETS ANTI-PROSTITUTION AMENDMENT ACT OF 1995," at 1–2 (December 22, 1995). The Council even referred to the amended offense as a "misdemeanor." *Id.* at 3.

Appellant does not dispute that the District of Columbia Code treats FTO as a "criminal offense." The Traffic Adjudication Act of 1978, D.C.Code § 40–601 *et seq.* (1998), decriminalized many traffic offenses by reclassifying them as civil infractions to be adjudicated administratively. At the same time, the Act declared that some traffic offenses "shall continue to be prosecuted as criminal offenses," specifically including violation of 18 DCMR § 2000.2. *See* D.C.Code § 40–612(19). Similarly, D.C.Code § 40–621, which directs that "parking, standing, stopping or pedestrian offenses" shall be adjudicated through the Bureau of Traffic Adjudication, exempts 18 DCMR § 2000.2 (by referencing § 40–612(19)), thereby underscoring that FTO would still be treated criminally even when the violator is a pedestrian. Appellant offers no persuasive reason why, as a traffic offense of this kind, FTO should not be regarded as "serious" within the meaning of the VVCCA. *See Hill v. United States,* 512 A.2d 269, 274 (D.C.1986) ("Clearly ... an unregistered automobile does not reflect a minor traffic offense; it is among the motor vehicle offenses still subject to criminal, not merely administrative, adjudication." (citing D.C.Code § 40–612)); *District of Columbia v. Sullivan,* 436 A.2d 364, 369 n. 1 (D.C.1981) (Kern, J., concurring) ("Serious offenders [of traffic violations] are specifically exempted from the reach of the [Traffic Adjudication] Act." (internal quotation marks omitted)). Any doubt on the issue was eliminated by the Council's dramatic increase of the maximum fine for the offense from $50 to $1000, with the intent of making it an effective tool to combat "the crime of prostitution."

Since we conclude that FTO is a serious traffic offense within the meaning of the VVCCA, the trial court properly ordered

---

1. *See* "SAFE STREETS ANTI-PROSTITUTION AMENDMENT OF 1996," 43 D.C.Reg. 1570, 1571

(March 29, 1996).

the assessment of $250.[2]

The government takes the occasion to point out that the $50 fine imposed by the trial judge is below the statutory minimum fine of $100.[3] The Government may seek correction of the sentence under Super.Ct.Crim.R. 35(a). *See Holiday v. United States,* 683 A.2d 61, 65, 90 (D.C. 1996); *Joiner v. United States,* 585 A.2d 176, 180 (D.C.1991); *Gray v. United States,* 585 A.2d 164, 166 (D.C.1991). Without prejudice to such a motion, we affirm the judgment of conviction.

*So ordered.*

---

2. Appellant's additional contention that the government unlawfully amended the charging information at the start of trial has no merit. Adding the language "a pedestrian" to it (the information originally misdescribed appellant as "the operator of a motor vehicle") did not change the offense charged, *see* Super.Ct.Crim.R. 7(e); *Byrd v. United States,* 579 A.2d 725, 726 (D.C.1990), nor does appellant claim that it prejudiced her in any way. *Id.; Dyson v. United States,* 485 A.2d 194, 197 (D.C.1984).

3. When the judge asked at trial "what is the penalty," government counsel mistakenly answered "Fifty dollars."