**UNITED STATES of America,
Appellee,**

v.

**John Q. WESLEY, Appellant.**

**No. 01–3107.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 2002.

Decided June 21, 2002.

Rehearing and Rehearing En Banc Denied Aug. 1, 2002.

---

Nicholas H. Cobbs, appointed by the court, argued the cause and filed the briefs for appellant.

Elizabeth H. Danello, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Roscoe C. Howard, Jr., U.S. Attorney, John R. Fisher and Roderick L. Thomas, Assistant U.S. Attorneys.

Before: SENTELLE and GARLAND, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

John Q. Wesley was arrested for violating the terms of his pretrial release and then convicted for unlawfully possessing a gun and drugs at the time of his arrest. He challenges his convictions on the ground that the evidence the government used against him at trial was obtained in violation of the Fourth Amendment. Finding no constitutional violation, we affirm the judgment of the district court.

I

Wesley had the misfortune of being arrested three times at almost the same location, near the intersection of Stanton Road and Trenton Place, S.E., in Washington, D.C. While the only convictions at issue here are those that resulted from the last of the three arrests, we describe the other two as a necessary prologue.

In June 2000, police officers found Wesley near the Stanton–Trenton intersection in possession of fourteen bags of crack cocaine. As a condition of his release pending trial, the District of Columbia Su-

perior Court ordered him to stay away from a three-block radius of the 1700 block of Trenton Place (the block immediately adjoining Stanton Road). In October 2000, still awaiting trial for his June arrest but apparently undeterred by it, Wesley was again found near the Stanton–Trenton intersection. On that date, Officer Andre Martin—who was unaware of Wesley's June arrest—discovered Wesley on Trenton Place about thirty feet from Stanton Road, this time in possession of six bags of crack cocaine. Again, Wesley was arrested. Again, the D.C. Superior Court released him pending trial on the condition that he stay away from the Stanton–Trenton intersection. The October stay-away order expressly barred Wesley from the "Intersection of Trenton Pl. & Stanton Rd. SE," but incorporated by reference the terms of the June order.[1]

Finally, we come to the arrest that generated the convictions from which Wesley now appeals. A few weeks after arresting Wesley in October 2000, Officer Martin learned (through the police computer) that the court had released Wesley subject to an order to stay away from the "Intersection of Trenton Pl. & Stanton Rd. SE." Martin did not know of the June order's more specific injunction to stay away from a three-block radius of Trenton Place, or that the October order had incorporated the June injunction by reference. From his frequent patrols in the area, however, Officer Martin did know that Wesley was once again frequenting the intersection. Accordingly, on November 14, 2000, Martin told his colleague, Officer Rodney Daniels, that he thought Wesley was likely to be in the area, and the two officers drove there to investigate.

Martin's suspicions were well founded: Wesley was sitting in his car on Stanton Road, parked approximately "three to four cars" from the point at which Stanton Road and Trenton Place cross. With him was his cousin, Antonio Hagens. When the two police officers pulled up beside his car, Wesley's "eyes got real big," a reaction that both Martin and the district court interpreted as expressing "shock." Wesley tried to escape by backing out of his parking place, but the officers stopped him. Officer Martin opened the car door and removed Wesley. Martin then placed him under arrest for violating the October stay-away order, handcuffed him, and put him in Martin's patrol car. Officer Daniels removed Hagens and handcuffed him as well.

After securing Wesley, Martin looked under the driver's seat where Wesley had been sitting and discovered a loaded, nine-millimeter pistol. In the car's ashtray, he found two ziplock bags of crack cocaine. Daniels and another officer who had arrived on the scene then searched the car's trunk and found another quantity of crack and a number of empty ziplocks.

A grand jury indicted Wesley for possession of cocaine base with intent to distribute, 21 U.S.C. § 841(b)(1)(B)(iii); using or carrying a firearm during a drug-trafficking offense, 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a convicted felon, id. § 922(g)(1). In a motion to exclude the government's use of the gun and drugs as evidence, Wesley charged that his arrest was unlawful, and that even if it were not, the subsequent search exceeded the permissible scope of a search incident to arrest. The district court denied the motion, the jury convicted, and the court

---

1. The October order, stating the conditions of Wesley's release and signed by the defendant, provided: "1329 Notice in F3717–00/ Stay Away: Intersection of Trenton Pl. & Stanton Rd. SE." The phrase "1329 Notice" is a reference to D.C.Code § 23–1329, which prohibits violations of the terms of pretrial release. "F3717–00" is the case number assigned to Wesley's June appearance in Superior Court.

sentenced Wesley to fifteen years in prison.

## II

■■■■ Although the police searched Wesley's car without a warrant, such a search is permissible if it falls within the familiar "search incident to arrest" exception to the Fourth Amendment's warrant requirement. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). To qualify for the exception, (i) the arrest must be lawful, and (ii) the subsequent search must not exceed the scope permitted by the exception. *See United States v. Bookhardt*, 277 F.3d 558, 564 (D.C.Cir.2002); *In re Sealed Case 96–3167*, 153 F.3d 759, 767 (D.C.Cir. 1998). As he did below, Wesley challenges the search of his car as failing to meet either criterion. In considering this kind of challenge, we review de novo the district court's conclusions of law, *United States v. Weaver*, 234 F.3d 42, 46 (D.C.Cir.2000), as well as its determinations of probable cause, *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). However, we review "findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts." *Id.*

### A

■■■■ Wesley's first contention is that his arrest for violating the October stay-away order was unlawful. To have been lawful, the arrest must have been based upon probable cause to believe that a crime was being committed. *See Bookhardt*, 277 F.3d at 565; *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 323, 354, 121 S.Ct. 1536, 1541, 1557, 149 L.Ed.2d 549 (2001) (holding that an arrest is lawful if an officer has probable cause to believe

that the defendant committed a misdemeanor in his presence). Although the intentional violation of a pretrial release order is a criminal offense under District of Columbia law, D.C.Code § 23–1329(c), Wesley contends that Officer Martin lacked probable cause to believe that he was violating the October order. He argues that, since the government concedes Martin knew only that the court had ordered Wesley to stay away from the "intersection" of Trenton Place and Stanton Road, and since Martin did not find Wesley at that intersection but instead found him three or four cars away, the officer did not possess the requisite probable cause.

■■■■ Probable cause to arrest "requires the existence of 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Dawkins*, 17 F.3d 399, 403 (D.C.Cir.1994) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979) (alterations omitted)). Both parties argue that the question before this court is whether a reasonable person, knowing what Martin knew at the time of Wesley's arrest, *would have believed* that the location at which the officer found Wesley fell within the October order's command that Wesley stay away from the "Intersection of Trenton Pl. & Stanton Rd. SE." We note, however, that there is no question that this location *did in fact* fall within the compass of the June order, and that Wesley knew it did. The October order, which Wesley signed, incorporated by reference the June order's command that he stay not merely three car lengths away, but a full three blocks away.[2]

---

**2.** We therefore reject Wesley's suggestion (not quite framed as an argument) that the October order was too ambiguous to put him on notice of the place from which he was barred.

We also agree with the district court that Wesley's look of shock upon seeing the officers, as well as his effort to escape, was

At oral argument, counsel for Wesley contended that the only place that qualifies as the "intersection" of Trenton Place and Stanton Road is the spot where the two streets cross. We cannot agree that a reasonable person could not read the word more broadly. *See, e.g.,* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 612 (10th ed. 1996) (defining "intersection" as "a place *or area* where two or more things (as streets) intersect" (emphasis added)). Indeed, when pressed at oral argument, counsel for Wesley conceded that "intersection" could encompass a place "very close to" the crossing point, and we regard it as splitting hairs to suggest that one car length falls within that description but that three do not. Nor does the district court's suggestion, that a block in every direction from the crossing would qualify, strike us as unreasonable.

Perhaps more important, what Officer Martin knew at the time of the November arrest included the location of the arrest that had led to the October stay-away order. On October 23, Martin himself had arrested Wesley—not at the spot where Trenton Place and Stanton Road cross, but rather some thirty feet away on Trenton. The district court found that location to be "approximately the same distance" from the intersection as the location at which Martin again arrested Wesley in November. And it was eminently reasonable for the officer to believe that the October order was intended to keep Wesley at least as far from the crossing as he had been at the time of his October arrest.[3]

 Wesley mounts two further attacks on the legality of the arrest that require no more than a brief mention. First, he contends that Martin made the arrest in bad faith, because Martin admitted that he made a "special trip" to the area with the expectation that he would find the defendant and would then be able to arrest him. There is, however, nothing improper about a police officer going to a location for the express purpose of investigating whether a crime is being committed. There certainly is no rule of law that requires an officer to wait patiently until a lawbreaker happens to cross his field of vision.[4]

 Second, Wesley argues that it would have been more "prudent" if, before arresting him, Martin had conducted an investigatory stop to determine why he was parked on Stanton Road. Wesley is correct that such a stop would have been permissible under the rule of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But it is not Wesley's place—or ours—to dictate which among an array of lawful tactics a police officer must use when confronting a suspect on the street. Because Martin had probable cause not just to stop Wesley but to subject him to a full custodial arrest, that arrest was lawful.

---

further evidence that he knew he was in violation of the stay-away order.

3. Wesley also argues that it was unreasonable for Martin to regard the stay-away order as encompassing more than the crossing of the two roads because Martin knew that Wesley lived close by. An expansive reading of the order, Wesley complains, would have . kept him from obtaining access to his home. This argument is answered, however, by the district court's finding that Wesley did not have to pass by the place at which he was arrested to gain access to his residence.

4. Martin's motivations are, in any event, irrelevant to the validity of the arrest. As the Supreme Court held in *Whren v. United States,* "the existence of probable cause must be determined objectively from the facts and circumstances known to the officers at the time of the arrest without regard to the 'actual motivations' or '[s]ubjective intentions' of the officers involved." *Bookhardt,* 277 F.3d at 565 (quoting *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (alteration in original)).

## B

Wesley's second contention is that, even if his arrest was lawful, Martin's search of the passenger compartment of Wesley's car exceeded the permissible scope of a search incident to arrest.[5] It did so, Wesley argues, because by the time of the search, the police had already removed him from the car and placed him in handcuffs. We disagree.

In *Chimel v. California*, the Supreme Court held that, incident to a lawful arrest, the police may properly search the area within the arrestee's "immediate control" without a warrant. 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Although such searches are justified by the need "to disarm and to discover evidence," the Court subsequently held them permissible regardless of whether, in the circumstances of a particular case, "there was present one of the reasons supporting" the exception. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 469, 38 L.Ed.2d 427 (1973); *see United States v. Chadwick*, 433 U.S. 1, 14–15, 97 S.Ct. 2476, 2485–86, 53 L.Ed.2d 538 (1977), *abrogated on other grounds, California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *United States v. Abdul–Saboor*, 85 F.3d 664, 667 (D.C.Cir. 1996).

The Supreme Court addressed the proper application of *Chimel* to automobile searches in *New York v. Belton*. Noting the difficulty that lower courts had had in applying *Chimel* in the context of the arrest of an occupant of a vehicle, the Court determined to adopt "a straightforward rule, easily applied, and predictably enforced." *Belton*, 453 U.S. at 459, 101 S.Ct. at 2863. The rule the Court announced was that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864.

In *United States v. Brown*, we noted that the search in *Belton* had taken place after the officer had already removed the defendant from the car, and therefore interpreted *Belton* as establishing the principle that the area under a defendant's "immediate control" for *Chimel* purposes must be determined as of the time of the arrest rather than of the search. *Brown*, 671 F.2d 585, 587 (D.C.Cir.1982). Rejecting the argument that the principle of *Belton* applies only to automobiles, we upheld the search of a pouch taken from the defendant at the time of the arrest, even though the search took place after the pouch was moved out of the reach of her control. As long as a search is "contemporaneous with" and an "integral part of" a lawful arrest, we said, the police may search a container that was "in hand or within reach when the arrest occurs," even if the officer has since seized it and gained exclusive control over it. *Id.* We have subsequently affirmed this rule—that the "determination of immediate control must be made when the arrest occurs"—on several occasions, and noted that it is in accord with the views of our sister circuits. *Abdul–Saboor*, 85 F.3d at 668; *id.* at 670 (collecting cases); *see Sealed Case*, 153 F.3d at 768; *United States v. Tavolacci*, 895 F.2d 1423, 1429 (D.C.Cir.1990).[6]

---

5. Wesley does not dispute that, if the search of the car's passenger compartment was valid, then the discovery of the gun and drugs in that area justified the subsequent search of the trunk. *See United States v. Turner*, 119 F.3d 18, 19–21 (D.C.Cir.1997).

6. *See also Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir.2001) ("[T]he right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest."); *Curd v. City Court of Judsonia*, 141 F.3d 839, 842 n. 9 (8th Cir.1998) ("It matters not whether [the

Because Wesley was seated in his automobile at the time Officer Martin arrested him, the holdings in *Belton* and *Brown* dictate that Martin's search of the car's passenger compartment was lawful. Wesley, however, contends that another of our opinions, *United States v. Lyons*, 706 F.2d 321 (D.C.Cir.1983), renders the search improper. In *Lyons*, we held that the search of a closet in the hotel room where the defendant had been arrested, a search that took place after the defendant had been handcuffed and seated in a chair near the doorway to the room, was not a valid search incident to arrest because it was "inconceivable that [the defendant] could have gained access" to the closet. *Id.* at 330–31. Wesley urges that we apply *Lyons* here and invalidate the search on the ground that, by the time the officers searched the passenger compartment of the car, they had already removed and handcuffed Wesley and Hagens, making it "inconceivable" that either of the two could have gained access to weapons or evidence contained therein.

We have previously noted that there is "some tension between *Lyons*, which seems to focus on whether the space searched was accessible at the time of the search, and our earlier decision in *Brown* and later decision in *Abdul–Saboor*, both of which focused on the time of the arrest." *Sealed Case*, 153 F.3d at 768. But whatever the continuing validity of *Lyons* in the

context of non-automobile searches, *Belton*'s bright-line rule, that incident to arrest the police may search the passenger compartment of an arrestee's automobile, validates the search in this case. *Belton* proclaimed its rule without caveat, notwithstanding that in that very case the occupants had in fact been removed from the automobile. The dissenters in *Belton* understood the case to establish a flat rule, applicable regardless of the status of the defendants at the time of the search. *See* 453 U.S. at 468, 101 S.Ct. at 2868 (Brennan, J., dissenting) ("Under the approach taken today, the result would presumably be the same even if Officer Nicot had handcuffed Belton and his companions in the patrol car before placing them under arrest...."). And this court has read it that way as well. *See Sealed Case*, 153 F.3d at 767–68 ("In *New York v. Belton*, the Supreme Court held that when the police lawfully arrest the occupant of an automobile, they may 'as a contemporaneous incident of that arrest, search the passenger compartment,' *even if the occupant has been removed and is no longer in the car at the time of the search.*" (quoting *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864) (emphasis added)); *see also Abdul–Saboor*, 85 F.3d at 668–69.[7]

Indeed, to take Wesley's view would largely render *Belton* a dead letter. The search of a passenger compartment incident to arrest would then be permissible

---

defendant] was capable of reaching the purse at the time of the search"); *United States v. Nelson*, 102 F.3d 1344, 1346–47 (4th Cir. 1996) (arrestee handcuffed prior to search of his bag, which was accessible at the time of arrest); *United States v. Hudson*, 100 F.3d 1409, 1419 (9th Cir.1996) (arrestee handcuffed before search of his bedroom); *United States v. Mitchell*, 64 F.3d 1105, 1110 (7th Cir.1995) (arrestee handcuffed before search of his briefcase); 3 Wayne R. LaFave, Search and Seizure § 6.3(c), at 312 & n.81 (3d ed. 1996 & Supp. 2000) (noting the "*Belton*-izing" of search-incident-to-arrest law in non-

automobile contexts and the application of a time-of-arrest standard in such cases).

7. In *Abdul–Saboor*, we also noted the *Belton* Court's statement of the analogous point that " 'no search or seizure incident to lawful custodial arrest would ever be valid [if] by seizing an article ... an officer may be said to have reduced that article to his exclusive control.' " *Abdul–Saboor*, 85 F.3d at 669 (quoting *Belton*, 453 U.S. at 461–62 n. 5, 101 S.Ct. at 2865 n. 5 (alterations in original) (internal quotation marks omitted)).

only if the officer left the defendant in the car, in which event the officer would have to crawl over him to effectuate the search, or if the officer removed the defendant but did not (or could not) effectively secure him. As we have previously warned, such a rule "might create a perverse incentive for an arresting officer to prolong the period during which the arrestee is kept in an area where he could pose a danger to the officer." *Abdul–Saboor*, 85 F.3d at 669; *see Sealed Case*, 153 F.3d at 768. And it would certainly vitiate the Supreme Court's intention to create "a straightforward rule, easily applied, and predictably enforced," *Belton*, 453 U.S. at 459, 101 S.Ct. at 2863, by requiring courts to determine retrospectively whether a given arrestee had been so insufficiently secured as to warrant the officer's search of the passenger compartment.

Accordingly, we read *Belton* as creating a bright-line rule that, incident to and contemporaneous with a valid custodial arrest of the occupant of a vehicle, the police may search the passenger compartment of the vehicle without regard to whether the occupant was removed and secured at the time of the search. This reading is in accord with that of every other circuit that has considered the question.[8] Applying that rule to Wesley's case, we conclude that the search of his automobile and the consequent discovery of the gun and drugs were lawful, and that the subsequent use of the evidence at trial was therefore permissible.

### III

Finding no constitutional infirmity in either Wesley's arrest or the search of his automobile, we affirm the judgment of the district court.

*So ordered.*

---

8. *See, e.g., United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir.2000); *United States v. Sholola*, 124 F.3d 803, 817–18 (7th Cir.1997); *United States v. Doward*, 41 F.3d 789, 791, 792 n. 1 (1st Cir.1994); *United States v. Moorehead*, 57 F.3d 875, 877–78 (9th Cir.1995); *United States v. Mans*, 999 F.2d 966 (6th Cir.1993); 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 7.1(c), at 448 & n.79 (3d ed. 1996 & Supp. 2000) (concluding that "under *Belton* a search of the vehicle is allowed even after the defendant [is] removed from it, handcuffed, and placed in the squad car," and collecting cases).