**UNITED STATES of America**

v.

**Lamont JONES, Defendant.**

**No. CR. 02–354(RJL).**

United States District Court,
District of Columbia.

Jan. 10, 2003.

**36**

Nikki U. Lotze, Roberts & Wood, Riverdale, MD, for Lamont R. Jones, Jr.

Julius Rothstein, U.S. Atorney's Office, Washington, DC, for U.S.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

The defendant has moved to suppress an automatic pistol seized from a hidden area in his automobile and a statement he gave to a police officer at the time of his arrest on July 26, 2002. On November 27, 2002, the Court heard testimony from one of the arresting officers at an evidentiary hearing held on these suppression motions. Upon consideration of the motions, the opposition thereto, the evidence presented at the hearing, and for the following reasons, the Court denies the defendant's motions to suppress the pistol and his statement.

### I. Background

The essential facts relating to the arrest and search in this case were credibly testified to by Officer Paul Skelton and are as follows: On the evening of July 26, 2002, Officer Skelton and approximately nine other police officers were managing a safety checkpoint ("roadblock"), on the corner of two one-way streets, 24th Street and G Street in Northeast Washington, D.C. The purpose of the roadblock was to check for automobile safety violations. All of the officers, except two, were wearing yellow, reflective traffic vests with the word "Police" prominently displayed on the front.[1]

A little after midnight, the defendant rounded the corner on G Street to find a group of officers and a roadblock awaiting him. Rather than proceeding to the checkpoint, the defendant stopped the car. As the officers moved toward the car and beckoned the defendant, by shouting and waving their hands, to drive forward to the checkpoint, the defendant placed the car in reverse and began backing up in the wrong direction on G Street. The defendant's retreat was quickly cut off by two officers in another police vehicle. In response, the defendant stopped, and started driving back towards the original point where he had first stopped. As he did, the same officers approached his car again and directed him to turn the engine off and roll down his window. The defendant complied. One of the officers opened the car door and Officer Skelton asked the defendant if he had a driver's license. The

---

**1.** One officer was not wearing a reflective vest, and Officer Skelton was wearing an orange reflective vest that did not have the word "Police" on the front.

defendant responded that he did not. The officers then handcuffed the defendant, placing him under arrest for failing to obey both their commands and the traffic laws.

Following the arrest, the officers searched the defendant himself and recovered a loaded ammunition clip for a semiautomatic weapon, two small bags of marijuana, and $350. Having found a loaded ammunition clip on his person, the arresting officer directed the officers searching the car to to look for a weapon. They did and found another bag of marijuana, either in or near the center console, as well as a loaded 9–mm semiautomatic pistol hidden in an area underneath the dash board on the passenger side and readily accessible through the car's glove box. The defendant has been charged with three counts: (1) unlawful possession of a firearm and ammunition by a convicted felon under 18 U.S.C. § 922(g)(1); (2) simple possession of a controlled substance under 21 U.S.C. § 844(a); and (3) unlawful possession of a large capacity ammunition feeding device under 18 U.S.C. § 922(g)(1).

## II. Discussion

### A. Motion to Suppress Evidence

The defendant argues that the evidence found in the vehicle should be suppressed because the search did not meet any of the exceptions to the Fourth Amendment's warrant requirement. The government responds that the officers did not need a warrant because the search was conducted incident to arrest, the officers had probable cause to believe that the vehicle contained evidence of a crime, and the police would have inevitably discovered the evidence in the car during a routine inventory search. Because the Court agrees that the officers conducted a valid search incident to the arrest, it need not address the latter two arguments.

It is well-established that police officers can conduct an automobile search incident to arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). In order "to disarm and to discover evidence," *see United States v. Wesley,* 293 F.3d 541, 547 (D.C.Cir.2002) (citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)), officers can search the area within the defendant's "immediate control" without a warrant, *see Wesley,* 293 F.3d at 547 (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). It is a bright-line "straightforward rule, easily applied, and predictably enforced." *Wesley,* 293 F.3d at 547 (citing *Belton,* 453 U.S. at 459, 101 S.Ct. 2860). However, before determining whether a search exceeded the exception's scope, a court first must determine whether the arrest itself was lawful, which in turn depends on whether there was probable cause to believe that the defendant had committed a crime. *See Wesley,* 293 F.3d at 545 (citing *United States v. Bookhardt,* 277 F.3d 558, 564 (D.C.Cir.2002); *In re Sealed Case 96–3167,* 153 F.3d 759, 767 (D.C.Cir.1998)).

Thus, the first issue before the Court is whether the officers had probable cause to arrest the defendant for committing traffic offenses. Officers observing violations of traffic laws, including driving without a license, *see,* D.C.Code § 50–1401.01(c) (2000) (operators of motor vehicles must have their license in their immediate possession), and failure to obey a traffic officer's lawful commands, *see Morgan v. District of Columbia,* 730 A.2d 655 (D.C.1999) (citing 18 DCMR § 2000.2 (1997 Supp.)), can make warrantless ar-

rests. D.C.Code § 23–581 (1996) ("A law enforcement officer may arrest, without a warrant having previously been issued therefor ... a person who he has probable cause to believe has committed or is committing an offense in his presence."); cf. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (finding that police can arrest persons for traffic misdemeanors). The officers need only have probable cause to arrest, which "requires the existence of 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing or is about to commit an offense." *Wesley*, 293 F.3d at 545 (quoting *United States v. Dawkins*, 17 F.3d 399, 403 (D.C.Cir.1994)). Here, the record shows that the defendant, after observing the roadblock, tried to avoid the officers and disobeyed their directives to pull up to the checkpoint. The checkpoint, like the eight officers manning it, was clearly marked. When the defendant began to avoid the checkpoint by reversing down a one-way street, the officers, outfitted in their unmistakable "Police" vests, directed him towards the checkpoint. Only after his escape route was blocked by another police vehicle did the defendant comply. Therefore, the facts and circumstances were such that the officers had probable cause to believe that the defendant violated traffic laws and refused to heed the officers' traffic commands. Furthermore, when the defendant informed the officers, prior to exiting the car, that he did not have a driver's license,

they had additional probable cause to arrest him for another traffic offense.

 Once it is established that the officers had probable cause to make an arrest, the Court must determine whether their search of the auto exceeded the scope of a proper "search incident to an arrest." The defendant argues that since he was handcuffed and on his knees by the time the search of the auto took place, he posed no danger to the officers, and therefore, any search of the auto incident to the arrest was unnecessary. That argument is without merit. The D.C. Circuit has clearly held that officers can conduct searches incident to arrest even if the defendant has already been removed from the car and placed in handcuffs. *United States v. Wesley*, 293 F.3d at 541.[2] Moreover, while the record is not completely clear on whether the search of the car began after, or at the same time as, the search of the defendant, the ambiguity is inconsequential. So long as the search of the auto incident to the arrest was not done before, or too long after, the lawful arrest, which in this case it was not, the search of the passenger compartment, including the hidden area accessible through the glove box was permissible under the bright-line rule. Thus, the motion to suppress the evidence retrieved from the automobile is denied.

## B. Motion to Suppress Statement

 The Court also denies the motion to suppress the defendant's pre-arrest statement that he did not have a driver's license. Although a custodial arrest requires a *Miranda* warning before interrogation, *see Miranda v. Arizona*, 384 U.S.

---

**2.** Though it is not necessary that the officers feel that the defendant poses a likely danger nor is it necessary that the defendant have a likely probability that he can return to the car, it is worth noting that the Officer Skelton was still concerned that the defendant could potentially harm the officers. Officer Skelton explained that "even a handcuffed prisoner ... can be very dangerous," stating, for example, that he did not know whether or not the defendant was a "marshal arts expert." Transcript of Motion Hearing, Nov. 27, 2002, at 39.

436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("Custodial interrogation is defined as 'questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom in any significant way.'"), the question that prompted the defendant's admission was asked *before* the defendant was actually removed from the car and arrested. Officer Skelton credibly testified that as the other officer opened the door, the defendant readily admitted that he did not have a driver's license. At that point, the defendant was removed from the car and arrested, not only for failing to obey their commands, but for driving without a license. For this reason, the officer's question did not have to be preceded by *Miranda* warnings and the defendant's Fifth Amendment right was not violated.

### III. Order

**ORDERED** that defendant's motion to suppress evidence [# 12] is DENIED;

**FURTHER ORDERED** that defendant's motion to suppress statements [# 11] is DENIED;

**SO ORDERED.**