**UNITED STATES of America,**

v.

**Monte F. BROWN, Defendant.**

**No. CRIM.02–0283(PLF).**

United States District Court,
District of Columbia.

May 9, 2003.

David B. Deitch, Ana Felisa Matheson, U.S. Attorney's Office, Washington, DC, for U.S.

Michelle M. Peterson, Fed. Public Defender for D.C., Washington, DC, Bernard Grimm, Grimm, Petras & Weiser, P.C., Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter came before the Court for a hearing on defendant's motion to suppress tangible evidence. For a variety of reasons, and because of the need for supplemental briefing on certain issues, the hearing took place over the course of portions of two days, December 10, 2002 and March 5, 2003. Upon consideration of the memoranda submitted by counsel for both sides, the relevant case law, and the testimony of the witnesses, the Court has determined to grant the motion to suppress. The following constitutes the Court's findings of fact and conclusions of law.

## I. FACTUAL BACKGROUND

At the motions hearing, Officer Robert LaChance of the United States Park Police testified that on July 29, 2001, at approximately 1:00 o'clock in the morning, he was on patrol in the Fort Dupont area. At that time, he observed a gray Chevrolet Celebrity traveling at a speed faster than the posted speed limit; with the aid of radar, he clocked the car driving at 44 miles an hour in a 25–mile per hour speed zone. *See* Transcript of December 10, 2002 Motions Hearing ("Tr.") at 8–9. Officer LaChance stopped the vehicle which had only one occupant, the driver, who subsequently was identified as the defendant Monte Brown. The officer walked to the driver's side of the car, identified himself as a police officer and asked the driver for his driver's license and registration. *See id.* at 9–10, 43. The driver did not provide either a license or a registration but instead handed the officer a District of Columbia non-driver's identification card. The photograph on the identification card depicted the driver and identified him as Monte Brown. With the identification card in hand, Officer LaChance returned to his cruiser, wrote out a speeding ticket, and radioed the Park Police communications center, asking for a driving status check of Monte Brown. *See id.* at 10–11. The center advised Officer LaChance that Monte Brown did not have a license to operate a motor vehicle in the District of Columbia. *See id.* at 12, 33–34, 46–47. Officer LaChance then returned to the vehicle, asked the defendant to get out of the car, arrested him for driving without a

permit, handcuffed him and placed him in the back of the police cruiser. *See id.* at 12, 35–36.[1]

Once the defendant was handcuffed and seated in the police cruiser, Officer La-Chance returned to the defendant's vehicle and undertook what he described as a "search incident to arrest." Tr. at 13; *see also id.* at 36. First the officer searched the passenger compartment, which he defined as the front and back seats, "the entire compartment," or the interior of the vehicle. *Id.* at 13, 19–20. On the driver's side under the seat, Officer LaChance found an identification card bearing the defendant's photograph but a different name and different address, that of one David Linchvancid, and a District of Columbia driver's license with the defendant's photograph on it but with yet another name and address, that of John Wright. *See id.* at 13–16. The officer also found an American Express card in the name of David Linchvancid and a check printed with the same name. *See id.* at 16–17. Finally, the officer found a receipt for repairs on the vehicle in the name of defendant Monte Brown. *See id.* at 18. The officer testified that he thought it "unusual" that some of the identification cards he had located pictured the defendant but listed a different name. *Id.* at 14–15.

After Officer LaChance finished searching the inside of the vehicle, he went to the back of the car and opened the trunk. By this time, Officer Lehn had arrived on the scene. *See* Tr. at 20. Inside the

---

1. In addition to Officer LaChance, two other witnesses testified at the motions hearing. Maria Alexandratos, a defense investigator, testified regarding her search of records at the Department of Motor Vehicles and her review of the defendant's file from the Clerk's Office of the Superior Court of the District of Columbia Traffic Division. The file indicated that the defendant had been charged with

driving without a permit on July 29, 2001, but that the traffic case subsequently was dismissed. Thomas Spann, a supervisor at the Department of Motor Vehicles and an authorized custodian of records, testified that, according to the records of the DMV, the defendant did not have a valid District of Columbia driver's license on July 29, 2001.

trunk, the two officers found a pager, a comforter, and some shoes—all of which appeared to be new items and were contained in shopping bags with the names of stores on them. *See id.* at 21–23, 51. The officers also found a loaded handgun in a brown paper bag. *See id.* at 21–24. The weapon was a Barnardelli .380 caliber semi-automatic pistol. *See id.* at 23.[2] The grand jury subsequently returned a one-count indictment, charging the defendant with unlawful possession of a firearm and ammunition by a prior convicted felon, in violation of 18 U.S.C. § 922(g).

## II. ANALYSIS

### A. The Arrest And Search of The Passenger Compartment

The defendant argues that Officer La-Chance did not have probable cause to stop and search his vehicle. He further argues that even if the officer lawfully could have stopped him for speeding, neither speeding nor driving without a license is an arrestable offense in the District of Columbia, and that it therefore was unlawful for Officer LaChance to arrest Mr. Brown, place him in handcuffs and take him into custody. According to the defendant, the officer should have given him a traffic citation and have let him leave. The defendant next argues that once he was in handcuffs and thus disabled, any search of the interior of the vehicle was improper, particularly because the officer had no reason to fear for his safety. Finally, the defendant maintains that even if the arrest and the search of the interior of the car were lawful, propositions with which he vehemently disagrees, the officer had absolutely no lawful justification for opening and searching the trunk.

The government responds that Officer LaChance had probable cause to stop the defendant's vehicle and issue a citation for speeding, and that in the course of doing so, it was reasonable for the officer to ask the defendant for his license and registration. The government then argues that once Officer LaChance had determined that the defendant had no license to drive in the District of Columbia, he had probable cause to arrest the defendant for driving without a permit and to take him into custody. Furthermore, once the defendant was under arrest, the officer was free to search the interior of the vehicle as a search incident to arrest. Finally, the government maintains that the false identifications the officer found in the passenger compartment of the vehicle gave him probable cause to believe that the defendant was engaged in or about to engage in identity fraud and that further evidence of that crime might be located in the trunk, giving the officer the right to search the trunk.

 The Court is satisfied that Officer LaChance had probable cause to stop the defendant's vehicle for speeding and that it was lawful for him to ask the driver to display a license and registration. When the defendant was unable to produce a driver's license and could only produce what the officer recognized as a non-driver's identification card, and a radio check confirmed the fact that Monte Brown had no license to operate a motor vehicle in the District of Columbia, the officer then had probable cause to believe that the defendant was committing the offense of driving without a permit. While there was a good deal of testimony and speculation during the course of the hearing about whether driving without a license is or is not an arrestable offense, the

---

2. The record is clear that the defendant did not consent to the search of the trunk or the search of the bags, and the government does not argue that he did. *See* Tr. at 51.

Court concludes that Officer LaChance had the lawful authority to arrest the defendant for driving without a license and was justified in taking him into custody and handcuffing him as a prelude to transporting him to the police station.[3]

█ The Supreme Court has made clear that the police may stop a motor vehicle when they have probable cause to believe that a traffic violation has occurred. *See Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Searcy,* 181 F.3d 975, 978 (8th Cir.1999) ("An officer may stop a vehicle when he has probable cause to believe that a traffic violation, however minor, has occurred."); *United States v. Scopo,* 19 F.3d 777, 782 (2d Cir.), *cert. denied,* 513 U.S. 877, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994) (same). The police also may place the driver of the vehicle under arrest if there is probable cause to believe that he or she has committed or is committing a crime, even a violation of the traffic laws. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 344–45, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Furthermore, once a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

█ While the Supreme Court's earlier decisions required as a justification for a search of a vehicle incident to arrest in a particular case the need "to disarm and to discover evidence," *United States v. Robinson,* 414 U.S. 218, 234–35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court in *Robinson* announced a bright-line rule that would "treat[ ] all custodial arrests alike for search justification." *Id.* at 235, 94 S.Ct. 467. In *Belton,* the Court extended that bright-line, "straightforward [ ], . . . easily applied, and predictably enforced" rule to the search of vehicles incident to the custodial arrest of an occupant: The police may conduct a search of a vehicle incident to a lawful custodial arrest regardless of whether the defendant is still in the vehicle or has been removed and is no longer near any weapon that might remain inside. *New York v. Belton,* 453 U.S. at 460, 101 S.Ct. 2860 (citing *United States v. Robinson,* 414 U.S. at 235, 94 S.Ct. 467). Thus, as our court of appeals has articulated the rule of *Belton,* any time the police arrest a driver (or a passenger) of a motor vehicle on probable cause, with or without a warrant, "the police may search the passenger compartment of the vehicle without regard to whether the occupant was removed and secured at the time of the search." *United States v. Wesley,* 293 F.3d 541, 549 (D.C.Cir.2002); *see also United States v. Lincoln,* 992 F.2d 356, 358–59 (D.C.Cir.1993). It therefore

---

**3.** Although Officer LaChance testified that driving without a permit is an arrestable offense under District of Columbia law and that the decision whether to arrest someone for that offense is not within the officer's discretion but is mandatory, the government has not provided support for the proposition that arrest is required. *See* Tr. at 25–26, 29–30, 34, 36, 54–55. It is clear, however, that Officer LaChance had the authority to arrest the defendant for driving without a license. *See* D.C.Code §§ 50–1401.01(d) (operation of motor vehicle without obtaining operator's per-

mit punishable by maximum fine of $300 or no more than 90 days imprisonment), 23–581(a)(1)(B) ("law enforcement officer may arrest, without a warrant having previously been issued therefor . . . a person who he has probable cause to believe has committed or is committing an offense in his presence"); *Taylor v. United States,* 662 A.2d 1368, 1370 (D.C.1995) ("[a]ppellant's arrest [for driving without obtaining operator's permit] was statutorily authorized"); *Punch v. United States,* 377 A.2d 1353, 1356 (D.C.1977) (same).

was lawful for Officer LaChance to stop the defendant's vehicle for speeding, to arrest the defendant because probable cause existed to believe he was driving without a license, and to search the passenger compartment of the vehicle.

### B. The Search Of The Trunk

■ The question remaining for the Court to consider is whether in the circumstances presented by this case it was constitutionally permissible for Officer LaChance and Officer Lehn to open and search the trunk in which the weapon that is the subject of this prosecution was discovered. According to Officer LaChance, he believed that once he made a lawful arrest he was entitled lawfully to search both the interior of the car *and* the trunk. As he testified on cross-examination:

Q. He was placed under arrest. He was not free to leave, correct?

A. That's correct.

Q. As you said in your grand jury, the next procedure you were going to engage in was conduct a search of the car incident to a legal arrest, correct?

A. Yes, sir.

Q. And driving without a license is an arrestable offense under the D.C.Code, correct?

A. Yes.

Q. And your plan was despite what you found in the car you were entitled to search the car, the glove box and the trunk, correct?

A. Yes.

Q. All right. And that is legal under—after you properly arrested him, correct?

A. Yes.

Tr. at 36. The justification for the search of the trunk offered by government counsel was different: once the officer found evidence of identity fraud in the passenger compartment of the vehicle, he had probable cause to search the trunk for additional evidence of this crime. *See* Government's Opposition to Defendant's Motion to Suppress Physical Evidence ("Gov't.Opp.") at 4.

The problem with the government's argument is that Officer LaChance did not search the trunk because he thought he had found evidence of the crime of identity fraud and that there might be additional evidence in the trunk. Rather, he operated on the assumption that he has authority routinely to search the entirety of a vehicle, including the trunk, any time he makes an arrest of a person in a vehicle, no matter what the circumstances or purpose of the search. The officer stated that he believed he was entitled to search the trunk "despite what [he] found"—or failed to find—in the car. Tr. at 36. As defense counsel put it, Officer LaChance "was going to go into the trunk regardless." As the Supreme Court in *Belton* itself announced, however, its bright-line rule does not permit such a search: "Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." *New York v. Belton*, 453 U.S. at 460–61 n. 4, 101 S.Ct. 2860. Indeed, on the same day the Supreme Court decided *Belton*, Justice Powell explained that the considerations that led to the adoption of a "bright-line" rule permitting a search incident to arrest of the interior of a car whose occupants "enjoy only a limited expectation of privacy . . . do not apply to the trunk of the car, which is not within the control of the passengers either immediately before or during the process of arrest." *Robbins v. California*, 453 U.S. 420, 431–32, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (Powell, J., concurring); *see also United States v. Richardson*, 121 F.3d 1051, 1056 (7th Cir. 1997) (the *Belton* rule "is confined to

searches of the interior of the passenger compartment").

At oral argument and in its post-hearing submission, however, the government attempted to expand *Belton* beyond its intended limitation by arguing that under the Supreme Court's decision in *Whren v. United States*, the officer's "previously existing intention, if any, to conduct a search is irrelevant," because regardless of what Officer LaChance was thinking or what he intended, his discovery of items in the passenger compartment "objectively gave him a proper basis under the Fourth Amendment to search the trunk." Government's Post–Hearing Submission of Applicable Case Law at 2.[4] Such a composite of the *Belton* and *Whren* doctrines has not been recognized by either the Supreme Court or this Circuit, and for good reason. *Whren* is predicated on the existence of probable cause to arrest, while *Belton* describes the very outer limits of a search of a vehicle incident to that lawful arrest. A *Belton* search, it must be understood, is a search without a warrant and without probable cause other than probable cause to arrest. *See* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.1(c) (3d ed.1996). To qualify for the limited search authorized by *Belton* therefore, "(i) the arrest must be lawful, and (ii) the subsequent search may not exceed the scope permitted by the [search incident to arrest] excep-

tion." *United States v. Wesley*, 293 F.3d at 545. Because *Belton* authorizes a search without probable cause, its lawfulness depends first on the lawfulness of the arrest, which must be an arrest on probable cause, *United States v. Bookhardt*, 277 F.3d at 564, and second on the limited scope of the search delineated by *Belton* itself—a search of the passenger compartment of the car. Any search beyond the interior of a vehicle thus is no part of a search incident to arrest and must have its own independent justification.

 For the search of defendant's trunk to be constitutional, Officer La-Chance was required to have probable cause to believe both that there was evidence of a crime in the vehicle *and* that it was likely to be found in a particular place, the trunk of the car. As the Supreme Court has held, the scope of a warrantless search of a vehicle that is not made incident to arrest "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Probable cause to search exists only where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Caroline*, 791 F.2d 197, 201 (D.C.Cir.1986) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Thus, where a police

---

4. The government relies on *Whren* for the proposition that so long as there is probable cause to arrest, it does not matter what the officer's true motivation is. *See Whren v. United States*, 517 U.S. at 812–13, 116 S.Ct. 1769 (ulterior, even pretextual motives do not invalidate stop of vehicle and arrest for traffic offense based on probable cause to believe violation of law has occurred); *see also Arkansas v. Sullivan*, 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (so long as arrest is supported by probable cause Fourth Amendment not violated even if offi-

cer had pretextual subjective motive for stopping driver for speeding); *United States v. Bookhardt*, 277 F.3d 558, 565 (D.C.Cir.2002) (even if stop is pretext for search, officer's subjective intent is irrelevant so long as there was probable cause to believe driver had committed traffic violation); *United States v. Dhinsa*, 171 F.3d 721, 724–25 (2d Cir.1998), *cert. denied*, 534 U.S. 897, 122 S.Ct. 219, 151 L.Ed.2d 156 (2001) (officer's use of traffic violation as pretext to stop car in order to obtain evidence of more serious crime is of no constitutional significance).

officer discovers evidence of crime in the passenger compartment of a car during a *Belton* search, the question is whether in the particular circumstances facing him there is "a fair probability" that additional evidence of that crime is likely to be found "elsewhere in the car, including in its trunk." *United States v. Turner*, 119 F.3d 18, 20 (D.C.Cir.1997) (evidence of small quantity of marijuana, pieces of torn cigar paper and ziplock bag of green weed material in passenger compartment of vehicle was sufficient to establish a "fair probability" that defendant "might have hidden additional drugs not necessary for his current consumption in areas out of plain sight, including the trunk of the car").

■■■ This calculus necessarily involves a consideration of the police officer's assessment of the situation confronting him based on his own training, experience and judgment. As Judge Randolph has stated, " 'probable cause' is evaluated not only from the perspective of a 'prudent man,' but also from the particular viewpoint of the officer involved in the search or seizure." *United States v. Prandy–Binett*, 995 F.2d 1069, 1071 (D.C.Cir.1993), *cert. denied*, 510 U.S. 1167, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994) (citations omitted); *see also United States v. Turner*, 119 F.3d at 20. In the case of a search or seizure without a warrant, "the court's role is to decide whether the officer's inference from the facts was 'reasonable.' This depends on information showing the officer's accumulated knowledge of criminal activity, *information that must be in the record if it is to be considered.*" *United States v. Prandy–Binett*, 995 F.2d at 1071 (citations omitted) (emphasis added). Without testimony from the officer about what he did and why, the court cannot judge the reasonableness of his conduct. *Compare id.* at 1072 (probable cause existed because there was testimony to support officer's

stated inferences from the facts) *with United States v. Ortiz*, 422 U.S. 891, 897–98, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975) (no probable cause where "officers advanced no special reasons for believing respondent's vehicle contained aliens.") *and United States v. Gibson*, 19 F.3d 1449, 1451 (D.C.Cir.1994) (no probable cause where officer "did not testify how often he had encountered such an object during a pat down, and he related nothing from his experience to correlate objects of this sort with criminal activity"). Indeed, the government properly acknowledged these principles in its opening brief:

> Of course, probable cause is assessed "from the particular viewpoint of the officer involved in the search or seizure." *United States v. Prandy–Binett*, 995 F.2d 1069, 1071 (D.C.Cir.1993), *cert. denied*, 510 U.S. 1167, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994). This is so because "[l]aw enforcement officers naturally reach conclusions based on their training and experience." *Id.* Here, Officer La-Chance, based on his training and experience, and after having found evidence of crime in the passenger compartment of the car, reasonably believed that there was a fair probability that there might be more evidence of crime in the trunk. Thus, he properly searched the trunk and properly seized the items from the trunk of the car.

Gov't. Opp. at 4.

The government may have hoped that Officer LaChance, "based on his training and experience," would testify that he "reasonably believed that there was a fair probability that there might be more evidence of crime in the trunk," Gov't. Opp. at 4, but he did not so testify. Here, there is a complete lack of testimony regarding Officer LaChance's experience and training with respect to identity fraud or his application of that experience to the situa-

tion at hand. Officer LaChance never said he believed based on his experience that he had found evidence of identity fraud in the passenger compartment, never said (or even implied) that he therefore had reason to believe there was likely to be more such evidence elsewhere in the car, and never said why he thought he likely would find such evidence specifically in the trunk. Rather, Officer LaChance testified that he believed he was lawfully entitled to search the trunk of the vehicle incident to defendant's arrest regardless of what he found—or did not find—in the passenger compartment. *See* Tr. at 36. Officer LaChance acted in reliance on the "search incident to arrest" exception, not because he believed he had found evidence of a crime in the passenger compartment and therefore had probable cause to believe there was additional evidence in the trunk—a thought that clearly never crossed his mind. Under the bright-line rule of *Belton,* unless he had demonstrated probable cause to search the trunk that satisfies the *Ross* standard, Officer LaChance was limited to a search of the vehicle's passenger compartment only, the government's post-hoc rationalization notwithstanding.

While an officer's pretextual motive or subjective intent may be irrelevant under *Whren,* this is only so where he in fact has probable cause to arrest. *See Whren v. United States,* 517 U.S. at 812–13, 116 S.Ct. 1769 (pretextual motives do not invalidate arrest if the arrest is based on independent probable cause to believe a violation of the law has occurred). Thus, even assuming that *Whren* could apply to the pretextual search of a trunk (a dubious proposition in light of *Belton* ), it would not function to authorize such a search without probable cause to search and without credible testimony providing a basis for that probable cause. Indeed, in *Whren* itself there was "extensive evidence" from the

officers about what they did and why, and the district court "credited the testimony" of an officer who testified that he had observed three traffic violations. *United States v. Whren,* 53 F.3d 371, 372, 376 (D.C.Cir.1995), *aff'd Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The officer's pretextual motive was only irrelevant because he also had provided testimony as to the "articulable and specific facts necessary to establish probable cause to stop [the vehicle]." *Id.* at 376. In other words, even if an officer's motive might be irrelevant in evaluating a warrantless search, his perceptions and thought processes cannot be so easily dismissed. Nor can his lack of testimony. At a minimum, he must provide under *Ross* some testimony about what justified his actions, what inferences he drew from the circumstances he faced, and, in a case like this, specifically why he had a basis to believe there was evidence of crime in the trunk. The officer's search cannot be rationalized after the fact by the assertions of a government prosecutor when the officer himself never testified why he thought he had independent probable cause to believe there would be evidence of a particular crime in a particular place.

▪ The government's alternative theory, that the gun would have been inevitably discovered after the defendant's vehicle had been impounded, fares no better. Unlike the situation in *United States v. Gale,* 952 F.2d 1412, 1416 n. 7 (D.C.Cir.), *cert denied,* 503 U.S. 923, 112 S.Ct. 1302, 117 L.Ed.2d 524 (1992), on which the government principally relies, there was no testimony or other evidence presented in this case that the officer impounded the car, took steps to impound the car, or even that he intended to impound the car and/or conduct an inventory search. *See United States v. Infante–Ruiz,* 13 F.3d 498, 503

(1st Cir.1994) (government bears the burden of showing by preponderance of the evidence that item would inevitably have been discovered by lawful means); *see generally United States v. Roberts,* 852 F.2d 671, 675–76 (2d Cir.), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 583 (1988) (quoting *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)) ("evidence that was illegally obtained will not be suppressed 'if the government can prove that the evidence would have been obtained inevitably' even if there had been no statutory or constitutional violation").

For these reasons, the defendant's motion to suppress tangible evidence will be granted. A separate Order consistent with this Opinion will be issued this same day.

SO ORDERED.

### *ORDER*

This matter is before the Court on the defendant's motion to suppress tangible evidence. Upon consideration of the memoranda submitted by counsel for the parties, the relevant case law, and the testimony of the witnesses, and for the reasons set forth in the separate Opinion issued this same day, it is hereby

ORDERED that the defendant's motion to suppress tangible evidence is GRANTED.

SO ORDERED.