Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued March 11, 2004　　　　　　　　　Decided July 20, 2004

No. 03-3069

UNITED STATES OF AMERICA,
APPELLANT

v.

MONTE F. BROWN, JR.,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(02cr00283–01)

————

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellant. With him on the briefs were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher*, *Elizabeth Trosman*, and *Ana F. Matheson*, Assistant U.S. Attorneys.

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the brief for appellee.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*; RANDOLPH and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The main question presented in the government's appeal from an order suppressing evidence is whether, under the Fourth Amendment, items found in the passenger compartment of a car gave rise to probable cause to search the trunk. A subsidiary issue is whether it is necessary for the government to present evidence of the training and experience of the officer who conducted the search.

"Running radar" at 1:30 a.m. in the Fort Dupont area of Washington, D.C., United States Park Police Officer Robert LaChance clocked a Chevrolet sedan exceeding the speed limit and pulled it over. He asked the driver – Monte F. Brown, Jr. – for his driver's license. Brown produced a card containing his name and photograph; across the top of the card were the words "Washington, D.C. IDENTIFICATION CARD." LaChance radioed the Park Police communications center and confirmed that Brown did not have a District of Columbia driver's license. He then placed Brown under arrest, handcuffed him and put him in the back of the police car.

LaChance returned to Brown's vehicle and began searching it. In the passenger compartment he found a receipt in Brown's name for repair of the car; a valid registration for the car; a Virginia driver's license; a District of Columbia driver's license; an American Express credit card; and a blank personal check. Brown's photograph appeared on both of the licenses, each of which was under the driver's seat. The Washington, D.C. license bore the name of "John Wright" with an address different than the one on Brown's identification card. The Virginia license was in the name of "Donald Lichvancid" at an address in Arlington, Virginia. The American Express card was also in that name. The blank check was in the name of "Donald L. Vancid," and contained the same address as the Virginia license. Both the credit card and the check were on the passenger seat.

After searching the passenger compartment, Officer La-Chance turned his attention to the trunk. There he found what appeared to be newly purchased items and receipts for the items, among which were a pager, a comforter and several pairs of shoes. The items were in shopping bags with the names of different stores on the bags. The officer also discovered a loaded pistol.

The government charged Brown with one count of possession of a firearm by a convicted felon. Brown moved to suppress the pistol, arguing that it was the fruit of an unlawful search. The district court determined that Officer LaChance had probable cause to stop Brown for speeding, to arrest him for driving without a license, and to search the passenger compartment incident to the arrest. *United States v. Brown*, 261 F. Supp. 2d 1, 4-6 (D.D.C. 2003). The search of the trunk was another matter. *Id.* at 6-10. Officer La-Chance testified that he believed he was authorized to search the trunk incident to Brown's arrest for driving without a license. The district court held that under *New York v. Belton*, 453 U.S. 454, 460-61 n.4 (1981), only a search of a vehicle's passenger compartment may be conducted incident to a lawful arrest of an occupant. A search of a car's trunk required probable cause of its own. But Officer LaChance was not thinking in those terms. At the suppression hearing he said nothing about what the items found in the passenger compartment signified to him; and he did not testify about his experience and training. The district court held that the searching officer "must provide . . . some testimony about what justified his actions, what inferences he drew from the circumstances he faced, and, in a case like this, specifically why he had a basis to believe there was evidence of crime in the trunk." *Brown*, 261 F. Supp. 2d at 9. Since LaChance gave no such testimony, the court issued an order suppressing the pistol.

The district court was correct in holding that the search of the trunk depended on "whether the police had probable cause to believe that contraband might be found" there. *United States v. Rocky Brown*, 334 F.3d 1161, 1170 (D.C. Cir. 2003); *see also United States v. Turner*, 119 F.3d 18, 20 (D.C.

Cir. 1997). It follows that Officer LaChance misunderstood the requirements of the Fourth Amendment. It does not follow that his error rendered the search of the trunk unconstitutional. In holding otherwise, the district court relied on two statements in *United States v. Prandy-Binett*, 995 F.2d 1069, 1071 (D.C. Cir. 1993) (*Prandy-Binett I*) (internal citations omitted): (1) " 'probable cause' is evaluated not only from the perspective of a 'prudent man,' but also from the particular viewpoint of the officer involved in the search or seizure"; and (2) "whether the officer's inference from the facts was 'reasonable' . . . depends on information showing the officer's accumulated knowledge of criminal activity, information that must be in the record if it is to be considered." Both statements accurately reflect the law. Neither was meant to suggest that a court must hold a search unconstitutional unless the officer testifies about how his particular training and experience led him to draw inferences amounting to probable cause.

Our opinion in *Rocky Brown* makes this clear enough, but the decision came down after the district court ruled in this case. *Rocky Brown* also dealt with the search of a car's trunk. As here, the question was whether there was probable cause to believe the trunk held contraband. We sustained the search because it was reasonably likely, in light of what the passenger compartment contained (a pistol) and other evidence (including multiple gunshots heard recently in the neighborhood), that another weapon would be in the trunk (as it was). 334 F.3d at 1171. In finding probable cause for the search of the trunk, we did not mention reasonable inferences from the evidence in light of the officer's particular expertise. Like Officer LaChance, the officer in *Rocky Brown* had not thought along those lines. He opened the trunk to secure whatever it contained, believing – wrongly – that he did not need probable cause to do so. 334 F.3d at 1172 n.8.

*Rocky Brown*, and the cases it cites and discusses, set forth three propositions of law that are controlling here. The first is that an officer's testimony about his experience, although relevant as *Prandy-Binett I* held, is not "a necessary element of a probable cause determination," *Rocky Brown*, 334 F.3d

at 1171. The second is that a search may be upheld even if the officer never considered whether he had probable cause to conduct the search. *Id.* at 1172 n.8. The third is that in this situation the standard "for probable cause is objective" (*id.*): would the evidence lead a "prudent, reasonable, cautious police officer" to believe that there was a reasonable likelihood the trunk contained contraband. *United States v. Davis*, 458 F.2d 819, 821 (D.C. Cir. 1972); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.2(c), at 38 (3d ed. 1996).

That standard, we believe, was met in this case. In "assessing probable cause," we "necessarily deal with conditional probabilities": "if one event occurs, how likely is it that another event will occur?" *United States v. Prandy-Binett*, 5 F.3d 558, 559 (D.C. Cir. 1993) (denying rehearing) (*Prandy-Binett II*); *Prandy-Binett I*, 995 F.2d at 1070. Here, any objective observer would have concluded that the driver's licenses, the American Express card, and the personal check found in the passenger compartment of Brown's car were fraudulent. Of these, the two most important were the Virginia license in the name "Donald Lichvancid" with Brown's photograph and the American Express card under the same name. It is unimportant whether this evidence tended to show that Brown had engaged in identity theft, or that he had procured the credit card under a fictitious name, or that the card was forged. *See Prandy-Binett I*, 995 F.2d at 1073-74. Whatever the case, several reasonable inferences leading to probable cause may be drawn. It may be useful to spell these out in sequence rather than rest on the non-descriptive "totality of the circumstances test," which of course is not really a test at all. *See Prandy-Binett II*, 5 F.3d at 559.

The initial step is to ask why Brown possessed the American Express card. The answer requires no special training or experience in law enforcement. It is likely, highly likely, Brown had the credit card for the same reason everyone else has credit cards – to purchase goods and services. As for the Virginia driver's license, there are two important considerations. The first is Brown's failure to display it when Officer LaChance asked him for his driver's license. This makes it

probable that Brown intended to use the fraudulent license for a purpose other than avoiding a charge of driving without one. The only plausible explanation is that he had the Virginia license so that he could engage in face-to-face transactions with his American Express card. It is common knowledge that merchants sometimes demand credit card purchasers to produce a driver's license as identification. Since Brown probably had the credit card and the license in order to make fraudulent purchases, it is reasonable to assume that he had successfully accomplished his objective, which brings us to the trunk of the car. Everyone knows that drivers who lawfully purchase items at stores often place their purchases in the trunks of their cars. Nothing in common experience suggests that criminals act any differently. The trunks of automobiles store items; they also conceal them. The time of the stop – 1:30 a.m. – may somewhat lessen the likelihood that Brown purchased anything within the previous few hours. But nothing tended to offset the distinct possibility that the trunk contained earlier purchases. It is fair to assume that one would not run the risk of driving around with such obviously incriminating documents unless they were going to be put to use. Burglar's tools on a car's passenger seat give rise to a likelihood not only that the driver used the tools but also that he placed the fruits of his crime in the trunk. So here.

Other reasonable inferences suggested that evidence of criminal activity might be in the trunk. The Virginia driver's license did not exactly match the name on the check ("Donald L. Vancid"). The check would doubtless be of no use without an identification document containing the same name. Since such a document was not in the passenger compartment, one logical place to look for it was the trunk of the car. In addition, the number on the check – 2484 – suggested the existence of other checks in the series. Again, a logical place to look for them was in the trunk.

For these reasons, "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *Brinegar v. United States*, 338 U.S.

160, 175 (1949), lead to the conclusion that the search of the trunk was supported by probable cause.

*Reversed.*