**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4452**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

CLIFFORD LAIHBEN,

               Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Catherine C. Eagles, District Judge. (1:07-cr-00039-CCE-1)

Argued: May 15, 2012          Decided: June 7, 2012

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James B. Craven, III, Durham, North Carolina, for Appellant. Frank Joseph Chut, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Ripley Rand, United States Attorney, Terri-Lei O'Malley, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal grand jury indicted Clifford Laihben on counts of conspiracy, credit card and securities fraud, obstruction of justice, and witness tampering. Following a denial of his motion to suppress evidence seized during a search of his car, Laihben conditionally pled guilty to all counts, reserving the right to appeal the denial of his suppression motion. For the reasons that follow, we affirm.

I.

The search occurred in the early afternoon on August 15, 2006, in Winston-Salem, North Carolina.[1]

Detective Steven Tollie and Agent Deborah McClearen, driving down U.S. Highway 52 in an unmarked police car while on motel drug interdiction duty, observed in front of them a Ford

---

[1] In the district court and in his appellate brief, Laihben also posed a challenge to the court's refusal to suppress evidence seized from his car in an unrelated second search on December 9, 2009 in High Bridge, New Jersey. But, as defense counsel properly acknowledged at oral argument, none of the crimes charged in the indictment in any way rely on or even reference evidence obtained from this search. Further, it is not at all clear that the district court even relied on this evidence in sentencing Laihben. In any event, Laihben makes no claim that the evidence obtained from the New Jersey search could not be considered by the court at sentencing. See United States v. Lee, 540 F.2d 1205, 1207 (4th Cir. 1976). Accordingly, even if the district court did err in denying Laihben's motion to suppress evidence obtained during the New Jersey search, any error was harmless and merits no further discussion.

Escape with New York license plates cut across two lanes of traffic to exit onto Interstate 40 ("I-40"), in the same direction the officers were traveling. The officers soon noticed the same car make another unsafe maneuver when it entered an exit ramp and then abruptly swerved back onto I-40. They followed the vehicle to warn the driver that his driving was unsafe and to offer directions.

The Ford Escape left the highway at Stratford Road and made several other unsafe moves before turning into the parking lot of an abandoned restaurant, next to a Red Lobster. The officers pulled up in the parking lot and parked 30 or 40 feet away from the Ford Escape.

Det. Tollie approached the vehicle in plain clothes. Laihben, who was driving the Ford Escape, cracked open his driver's side door when Det. Tollie made contact with him. After presenting his police badge and credentials, the detective told Laihben that he was not going to ticket him (in fact, Det. Tollie later testified that he did not even have a ticket book with him) but warned Laihben that he was "going to cause a wreck" if he wasn't careful. The detective then asked Laihben if he was lost and needed directions. Laihben stared straight ahead and did not respond verbally. Instead, Laihben handed Det. Tollie his New York driver's license and a card with the contact information of a New York detective whom Laihben

3

identified as his uncle. Det. Tollie had not asked for identification. From the outset, Laihben appeared very nervous, and continued to be so even after Det. Tollie assured Laihben that he would not be ticketed.

Suspecting something was not right, Det. Tollie continued to make small talk so that he could "figure out what's going on." Det. Tollie asked Laihben what he was doing in town and whether he had found a hotel. Laihben responded he was bringing his sister from New York to "Winston University," which Det. Tollie knew did not exist but thought might refer to Winston-Salem State University. Det. Tollie then asked if Laihben's car was a rental; Laihben responded by handing Det. Tollie the paperwork for the car, which indicated that the car was rented to a "Shelly Laihben" at LaGuardia Airport. Det. Tollie asked Laihben who Shelly Laihben was, and if the passenger of the car was Shelly. Laihben responded that Shelly was his wife and that the passenger was his cousin, not Shelly. With respect to the hotel room, Laihben indicated that they were staying at a motel, which his cousin, the car passenger, had rented.

Det. Tollie then directed his attention to the passenger in the car and asked what her name was and where she was from. She did not make eye contact and her voice trailed off as she said she was from New York and stated a name. Det.

4

Tollie became "convinced something was wrong" and thought it was possible that the passenger "was being held against her will." Unable to hear the passenger, Det. Tollie told her to speak to Agent McClearen, who had been standing by the passenger's side of the car.

The passenger told Agent McClearen her name was Brandy Green. While Green had been speaking with Det. Tollie, Agent McClearen observed Green drop a card into her purse. Agent McClearen asked for and received permission to search Green's bag to look for an ID confirming her identity. In the purse, Agent McClearen found a Maryland driver's license issued to "Zilah Cooper" with Green's photograph. The agent also found Traveler's Checks under the name "Zilah Cooper" and a credit card in the name "Simbi Yandezo."

In the meantime, Det. Tollie informed Laihben that he suspected "something [was] going on," and asked if Laihben had "been in trouble with law enforcement before." Laihben responded that he had "done time on weapons violations." Based on that information, Det. Tollie asked Laihben to step out of the car so that he could pat him down for weapons. Laihben complied. After the frisk, Det. Tollie also asked Laihben additional questions about his relationship to Green, including whether they were cousins on their mother's or father's side. Laihben backtracked from his original description, indicating

5

that "we're not actually cousins, we're just real close and sometimes we call each other cousins."

After speaking with Laihben, Det. Tollie went over to the other side of the car to ask Green similar questions. Det. Tollie testified that Green also appeared "extremely nervous." When he asked if Laihben was her cousin, she said yes, indicating that their mothers were related. She also said that not she, but Laihben had rented the motel room. When confronted with the IDs with other women's names found in her purse, Green explained that the purse belonged to a cousin in New York. When Det. Tollie asked if she had any identification with her name on it, Green responded that she had identification at the motel and consented to taking the officers there.

At this point, the interaction had taken about 10-15 minutes. Det. Tollie informed Laihben of what had been found in Green's purse and that the officers were going to drive Green to the motel. Laihben refused to accompany them and became argumentative. Det. Tollie informed Laihben that "you don't have to go anywhere with me, but you're going to wait here while she and I go back to the motel." Det. Tollie called a uniformed police officer to wait with Laihben.

At the motel, Det. Tollie discovered a receipt from the motel, indicating that the room had been rented by "Zilah Cooper" and that the room had been paid for with a Traveler's

Check. After confronting Green with the inconsistencies, Det. Tollie ran the "Zilah Cooper" driver's license through the computer system and discovered that the license was fake. Based on this information, Det. Tollie suspected Green and Laihben of fraud crimes, and thereafter officers searched the vehicle and found uncut Traveler's Checks, American Express hologram stickers, two credit cards with different names, along with gift cards, merchandise receipts, and retail store information.

## II.

We find it a bit difficult to ascertain Laihben's precise objection to this search. At the suppression hearing, he contended that Det. Tollie did not have reasonable suspicion to detain him at the outset, but "concede[d] that once the interview happened with [Green] about the credit cards and the names on the hotel room, that there was perhaps probable cause" to conduct a search of the car. Thus, Laihben rested his argument before the district court on his contention that "the Fourth Amendment was already run afoul" by the time the officers searched Green's purse and the motel room. Laihben reasserted this argument in his briefing before this court. But, at oral argument before us, Laihben contended that while the officers may have had reasonable suspicion to detain him, they did not have probable cause to search his vehicle based on evidence

7

found in Green's purse and in the motel room.  In any event, we address both contentions.

In doing so, we review the district court's factual findings for clear error and its legal determinations de novo. See United States v. Day, 591 F.3d 697, 682 (4th Cir. 2010).  Of course, we view facts in the light most favorable to the government, the prevailing party in the district court.  See United States v. Matthews, 591 F.3d 230, 234 (4th Cir. 2009).

A.

The district court concluded that the officers' consensual encounter with Laihben did not become a detention until Det. Tollie decided to go to the motel with Green, told Laihben to "stay here," and called a uniformed officer to monitor Laihben.  We agree.

"A detention occurs where 'in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  United States v. Gray, 883 F.2d 320, 322 (4th Cir. 1989) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality)).  Circumstances that may suggest a detention include "the number of police officers present . . . , whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his

departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity." United States v. Jones, --- F.3d ----, 2012 WL 1632566, at *5 (4th Cir. May 10, 2012).

Here, at the very outset of the encounter, Det. Tollie informed Laihben he would not ticket him and was simply trying to help if he needed directions. Laihben himself acknowledged that "when [Det. Tollie] first approached the vehicle, he approached me very respectfully." See United States v. Drayton, 536 U.S. 194, 200 (2002) (noting that law enforcement officers do not create a detention "merely by approaching individuals . . . and putting questions to them"). Det. Tollie's weapon was concealed, and he did not threaten or use physical force. See United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992) (holding that police did not detain suspect where defendant cooperated with police, there was no threat of physical force, and the officers' tone of voice was not intimidating). Moreover, Laihben was not aware of a police car "conspicuously following him," and the officer did not block Laihben from moving his vehicle. Jones, 2012 WL 1632566, at *5. Nor did the officers begin the encounter with an immediate show of force by asking Laihben to lift up his shirt and submit to a patdown. Id. at *7-8.

Det. Tollie detained Laihben only after he could not ascertain Brandy Green's identity and she offered to take the officers to the motel room where she claimed to have identification. By that time, Det. Tollie had amassed "specific and articulable facts which, taken together" warranted detention of Laihben. Terry v. Ohio, 392 U.S. 1, 21 (1968). For Laihben's passenger identified herself as Brandy Green but the contents of her purse included identification bearing her photo but the name Zilah Cooper, Traveler's Checks under the name Zilah Cooper, and a credit card in the name of Simbi Yandezo, all suggesting identity theft and fraud. See e.g., United States v. Hamie, 165 F.3d 80, 83 (1st Cir. 1999). Laihben and Green provided conflicting responses as to whether they were cousins and who had rented the motel room. See United States v. Wallace, 429 F.3d 969, 976 (10th Cir. 2005). Moreover, the nervousness of both Laihben and Green, even after the officer assured them that he was not going to give them a ticket provided an additional basis for suspicion. See United States v. Foreman, 369 F.3d 776, 785 (4th Cir. 2004). These factors, taken together, were more than sufficient to warrant detention.[2]

---

[2] Of course, the police officers and Laihben did differ in their account of some of these facts, but the district court explicitly refused to credit Laihben's testimony, noting his demeanor, inconsistent testimony, and prior criminal record for crimes of fraud and deception. We, of course, defer to the (Continued)

10

B.

Alternatively, Laihben contends that because all of the incriminating evidence was found on Green or within her control in the motel room, it did not provide probable cause to search the car Laihben had driven and controlled.

Probable cause for a search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). We examine the totality of the circumstances "from the standpoint of an objectively reasonable police officer." Id.[3]

Even before arriving at the motel, Det. Tollie had discovered in Green's purse identification bearing her picture but the name Zilah Cooper and another credit card in the name of Simbi Yandezo. Laihben and Green had also provided inconsistent

district court on these credibility determinations. See United States v. Murray, 65 F.3d 1161, 1169 (4th Cir. 1995).

[3] While "[t]he Fourth Amendment generally requires police to secure a warrant before conducting a search," Maryland v. Dyson, 527 U.S. 465, 466 (1999), a warrantless search may nevertheless be valid, if the search "falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement," United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) (internal quotation marks and citation omitted). Here, Laihben does not dispute that the automobile search exception applies. See United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010).

11

answers about how they were related and who had rented the motel room. This evidence was certainly enough to raise the officers' suspicions. Once the officers arrived at the motel, they ascertained that the room was paid for with a Traveler's Check in the name of Zilah Cooper. When Det. Tollie ran the Zilah Cooper driver's license through the computer, it turned out to be fake. These factors provided substantial evidence that Green was engaged in identity theft, see 18 U.S.C. §§ 1028, 1028A, credit card fraud, see 18 U.S.C. § 1029, and that the motel room had been obtained by false pretenses, see N.C.G.S. § 14-100(a); State v. Perkins, 638 S.E.2d 591, 595 (N.C. App. 2007).

Moreover, this evidence sufficed to justify a search of the vehicle, although it had been rented and operated by Laihben, not Green. Even if Laihben is correct that the evidence found on Green's person and in the motel room only incriminated Green, she was a passenger in Laihben's car, and this evidence provided probable cause to believe that additional evidence of her criminal activity might be found in that car. See United States v. Ross, 456 U.S. 798, 806-09, 820-21 (1982); United States v. Brown, 374 F.3d 1326, 1329 (D.C. Cir. 2004).

Further, the evidence uncovered prior to the car search provided a strong basis to conclude that Laihben himself was involved in criminal conduct with Green. For Laihben and Green were driving together, they were staying in the same motel

12

room in which evidence of identity theft was found, and they had provided inconsistent answers as to how they were related and who had rented the motel room. See Pringle v. United States, 540 U.S. 366, 372-73 (2003) ("[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."); State v. Moore, 360 S.E.2d 293, 295-96 (N.C. App. 1987) (discussing the North Carolina crime of acting in concert).

In sum, by the time the officers searched Laihben's car, they had assembled an abundance of evidence, providing probable cause for the search.


III.

For the forgoing reasons, the judgment of the district court is


AFFIRMED.

13